

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
JUL 2 5 2005
CLERK, U.S. DISTRICT COURT
By _____
Deputy

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| TERESA D. COURTNEY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. |
| | § | 5:04-CV-283-C |
| | § | |
| JO ANNE B. BARNHART, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

## REPORT AND RECOMMENDATION

Plaintiff Teresa D. Courtney seeks judicial review of a decision of the Commissioner of Social Security denying her application for Supplemental Security Income (SSI). The United States District Judge, pursuant to 28 U.S.C. § 636(b), referred this case to the United States Magistrate Judge for report and recommendation, proposed findings of fact and conclusions of law, and a proposed judgment. After reviewing the administrative record and the arguments of both parties, this court recommends that the District Court reverse the Commissioner's decision and remand this case to the Commissioner for further proceedings.

### I. Standard of Review

Judicial review of the Commissioner's denial of Social Security benefits is limited to two issues: (1) whether the Commissioner's final decision is supported by substantial evidence, and (2) whether the Commissioner used proper legal standards to evaluate the evidence. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000) (citations omitted).

The substantial evidence standard requires more than a "simple search of the record for isolated bits of evidence" that would support the Commissioner's decision; the record must be considered as a whole. *Singletary v. Bowen*, 798 F.2d 818, 822-23 (5th Cir. 1986) (citation omitted).

## II.     Points of error

Courtney contends that the Administrative Law Judge (ALJ) failed to determine that her mental impairments are severe; failed to properly evaluate opinions provided by her physicians, Robert H. LeGrand, M.D., and Alejandro Munoz, M.D.; failed to evaluate the combined impact of her orthopedic and mental impairments; and failed to evaluate her subjective symptoms and her residual functional capacity under the appropriate standards. Courtney also contends that the ALJ's residual functional capacity standard is not supported by substantial evidence.

The ALJ's determination that Courtney's mental impairments were not severe is not reversible error.[1] Likewise, his evaluation of opinions provided by Drs. LeGrand and Munoz was not error; his decision demonstrates that he complied with the dictates of 20 C.F.R. § 416.927. He provided good cause for rejecting Dr. LeGrand's opinions and evaluated them

---

[1] An ALJ's failure to find that a particular impairment is severe is not, standing alone, reversible error. A finding of non-severity does not require remand when the ALJ continues to the fourth or fifth step of the disability evaluation process for his ultimate conclusion. *See Adams v. Bowen*, 833 F.2d 509, 512 (5th Cir. 1987). This is so because disability is not determined at the second step of the sequential evaluation process. Rather, at the second step of the evaluation process the ALJ must resolve the threshold issue of whether the claimant has a severe impairment or a combination of severe impairments. 20 C.F.R. § 404.1520(c) (2004). The ALJ must then determine whether, despite the presence of severe impairment(s), the claimant retains the ability to work. *See Boyd v. Apfel*, 239 F.3d 698, 706 (5th Cir. 2001) (A finding that a claimant has a severe impairment or combination of severe impairments does not foreclose a finding that the claimant can perform work). Because determining whether a claimant has severe impairments is merely a threshold determination, failure to specifically identify an impairment as severe is not reversible error.

under the regulatory factors utilized for analyzing treating source opinion as required by *Newton v. Apfel,* 209 F.3d 448, 455 (5th Cir. 2000). In regard to Dr. Munoz's opinions, the ALJ indicated that he considered the opinions but did not accord them weight. Although he did not analyze the opinions under the standards set forth under *Newton* and 20 C.F.R. § 404.927(d), he was not required to do so because Dr. Munoz was not a treating physician. 20 C.F.R. §§ 416.902, 416. 927(d); *see Newton,* 209 F.3d at 455.

However, the ALJ's failure to consider Courtney's subjective allegations regarding her mental impairments under the appropriate legal standards and to consider her mental impairments in assessing her residual functional capacity deprives his ultimate conclusion of substantial evidence and calls for remand.

### III.   Facts

Courtney applied for SSI on September 22, 2000, after she injured her back while working. (Tr. 52-54, 72.) On January 14, 2000, an ALJ found that Courtney was not disabled at the fifth step of the sequential disability evaluation process after determining that she was capable of working at less than the light exertional level but at more than the sedentary exertional level. (Tr. 176-82.)

Courtney appealed the decision and the Appeals Council remanded her case for resolution of a number of issues. (Tr. 199-201.) On remand, Courtney's case was assigned to another ALJ who held a hearing and issued another unfavorable decision. (Tr. 16-23.) The ALJ determined that Courtney was not disabled at the fourth step of the sequential disability evaluation process after finding that she could perform a full range of light work

and could therefore perform her past work as a cafeteria line server. (Tr. 23.) The Appeals Council denied Courtney's request for review and the administrative decision became the Commissioner's final decision. (Tr. 6-8.)

The evidence before the ALJ included application documents in which Courtney alleged mental limitations. She indicated in an application document completed in the year 2000 that she took Zoloft for depression (Tr. 87); that on April 29, 2003, she was still taking Zoloft which was prescribed by her treating physician, Dr. LeGrand; that on May 21, 2003, she suffered from depression (Tr. 236, 259); and that on August 28, 2003, she was taking Effexor for her depression (Tr. 269). Further, she indicted on a Daily Activity Questionnaire on November 2, 2003, and on November 22, 2003, that she was taking medication for depression and stress, that she experienced "bad mood swings and cr[ied] a lot," and did not like to leave her home. (Tr. 251-54, 255, 257, 269).

Likewise, at the hearing before the ALJ, Courtney testified that she suffered from depression, stress, anxiety, and mood swings, and that she spent many days crying and refusing to leave her bedroom. (Tr. 417-18.)

In addition to Courtney's subjective allegations, the record contains medical evidence regarding her mental condition. A document dated October 7, 2002, from West Texas Centers for Mental Health and Mental Retardation (West Texas MHMR) indicates that Courtney suffered from a depressed mood, frequent crying spells, irritability, fatigue, anxiety, quick temper, and suicidal thoughts. (Tr. 294.) On November 25, 2003, Courtney was again seen at West Texas MHMR with similar complaints. (Tr. 320.) At that time she reported

that she was taking Effexor and that her mental conditions had begun in the fall of 2000. (*Id.*) A report completed on that date indicates that she suffered from an inability to concentrate; impairments in memory; anxiety; markedly impaired responses; extremely abnormal mood; depressed mood; feelings of guilt and hopelessness; suspicious thoughts; and phobias. (Tr. 321-22.) She was diagnosed with Bipolar Disorder Not Otherwise Specified (NOS) and Personality Disorder Not Otherwise Specified (NOS). (Tr. 338.)

On March 1, 2004, Courtney was evaluated by Dr. Munoz at West Texas MHMR. (Tr. 341-42.) Dr. Munoz indicated that Courtney's behavior seemed appropriate; her communication and cognition were clear; her insight, judgment, and concentration were good; her memory seemed good; she was alert; her speech was coherent; and her communication was clear. (*Id.*) However, he also indicated that she was emotionally unstable and depressed. (Tr. 342.) He diagnosed Courtney with Bipolar Disorder NOS, assigned a Global Assessment of Functioning (GAF) score of 40[2], prescribed an antidepressant and mood stabilizer, and recommended a one-month follow-up. (*Id.*)

The ALJ acknowledged Courtney's testimony and Dr. Munoz's report. (Tr. 21.) However, he noted that Courtney never complained of depression to her treating physicians and that she did not seek treatment at West Texas MHMR until the end of 2003 when she reported emotional problems that were never reported to her treating physicians. (Tr. 22.)

---

[2] A GAF score is an assessment of an individual's psychological, social, and occupational functioning based on a hypothetical continuum of mental health and mental illness. AMERICAN PSYCHIATRIC ASS'N DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS at 34 (4th ed. 2000) (DSM-IV). A GAF score of 40 indicates that an individual has some impairment in reality testing or communication or that he has major impairments in areas such as work, family relations, judgment, thinking, or mood. *Id.*

He concluded that Courtney did not have severe mental limitations and that he saw "no reason whatsoever to give her wholly subjective complaints of depression any credence." (*Id.*)

## IV. <u>Discussion</u>

The record shows that Courtney first sought treatment for her depression at West Texas MHMR on October 7, 2002, rather than at the end of 2003. (Tr. 294.) Additionally and as the foregoing demonstrates, the record contradicts the ALJ's finding that Courtney never complained to her physicians about depression. As early as December 2000, Courtney reported that she was taking Zoloft for depression. (Tr. 87.) Thereafter, she reported continued treatment with Zoloft which was reportedly prescribed by Dr. LeGrand, (Tr. 236; *see also* Tr. 292), and at some point was prescribed Effexor, although it is unclear which physician prescribed the medication (Tr. 269; *see also* Tr. 315, 320). Significantly, the record also contains examination notes from physicians who acknowledged Courtney's prescriptions for anti-depressants. (Tr. 315, 320.) As Courtney argues, her physicians would not have prescribed anti-depressants for her if she had not complained to them about depression.

Given the fact that Courtney's physicians prescribed antidepressants for her and Dr. Munoz's uncontroverted diagnosis, Courtney's complaints regarding depression cannot be considered "wholly subjective"; the medical evidence in the record provides a basis for her complaints. Dr. Munoz's diagnosis of Bipolar Disorder NOS demonstrates that Courtney's mental condition would, to some degree, pose functional limitations upon her

abilities. Bipolar Disorder is a condition characterized by the occurrence of one or more manic episodes that are usually accompanied by major depressive episodes. AMERICAN PSYCHIATRIC ASS'N DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS at 345, 382-83. Bipolar Disorder NOS is the preferred diagnosis for patients who demonstrate very rapid alternation between manic symptoms and depressive symptoms. *Id.* at 387.

Thus, the medical evidence establishes a medically determinable impairment that could reasonably be expected to produce the symptoms Courtney alleged. 20 C.F.R. § 416.929(b). Therefore, the ALJ was required to evaluate Courtney's subjective allegations regarding her mental impairments under the standards set forth under 20 C.F.R. § 416.929(c)(3). He failed to do this. (Tr. 21-22.)

In addition, the ALJ failed to consider Courtney's mental limitations in determining her residual functional capacity. Even though he found that Courtney's mental impairments were not severe, he was required to consider how they would affect her residual functional capacity. 20 C.F.R. § 416.945(e). Further, he was required to consider the combination of all of Courtney's impairments, including her mental impairments, in determining her residual functional capacity. *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000); 20 C.F.R. §§ 404.1523, 416.923. His failure to do so deprives his ultimate conclusion of substantial evidence and requires remand.

V. **Recommendation**

Based on the foregoing discussion of the issues, evidence and the law, this court recommends that the United States District Court reverse the Commissioner's decision and remand Courtney's case for further administrative proceedings.

VI. **Right to Object**

Pursuant to 28 U.S.C. § 636(b)(1), any party has the right to serve and file written objections to the Report and Recommendation within 10 days after being served with a copy of this document. The filing of objections is necessary to obtain de novo review by the United States District Court. A party's failure to file written objections within 10 days shall bar such a party, except upon grounds of plain error, from attacking on appeal the factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc).

Dated: _____July 25_____, 2005.

NANCY M. KOENIG
United States Magistrate Judge